BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Shell Eggs Antitrust Litigation | MDL No. |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff King Kullen Grocery Co., Inc. ("Plaintiff"), by and through counsel, respectfully moves the Judicial Panel on Multidistrict Litigation (the "Panel") for an order transferring and centralizing the actions listed in the Schedule of Actions attached hereto, and all subsequent tag-along actions, to the United States District Court for the Southern District of Indiana, where the action brought by Plaintiff is pending,[1] for coordinated or consolidated pretrial proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Eggs are a staple commodity product. *See* Complaint, ECF No. 1 ("Complaint") ¶ 181. The prices at which egg producers sell eggs are largely dependent on benchmark prices set by Defendant Urner Barry Publications, Inc. ("Urner Barry"), referred to as the "Urner Barry quote" or "UB quote." *Id.* ¶ 114. Urner Barry sets the UB quote in part by relying on assessments of the market reported by egg producers. *Id.* ¶ 5. Plaintiff alleges that beginning in January 2022, Egg Producer Defendants[2] conspired to artificially inflate the UB quote, thereby increasing the prices

---

[1] *King Kullen Grocery Co., Inc. v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-02274-SEB-MJD (S.D. Ind.) ("Plaintiff's Action"). Unless otherwise indicated, all references to "ECF No." refer to the docket of Plaintiff's Action.

[2] "Egg Producer Defendants" refers to Cal-Maine Foods, Inc. ("Cal-Maine"), Rose Acre Farms, Inc. ("Rose Acre"), Versova Holdings, LLC ("Versova"); Hillandale Farms, which is comprised of Hillandale Farms of Pa., Inc., Hillandale-Gettysburg, LLC., Hillandale Farms East, Inc., and

they charged for eggs and generating massive profits. *Id.* Throughout this conspiracy, Egg Producer Defendants consistently used outbreaks of avian flu as a pretext to drive prices ever higher. *Id.* ¶ 10.

In March 2025, various news outlets, including *The Capitol Forum* and *The Wall Street Journal*, reported that the U.S. Department of Justice ("DOJ") was investigating whether egg producers—including Defendants Cal-Maine and Rose Acre—had conspired to raise prices of eggs. *Id.* ¶ 142. Following this reporting, average wholesale egg prices dropped dramatically, falling roughly 63% in just two weeks. *Id.* ¶ 144. The speed and magnitude of the price drop strongly suggest that prior egg prices were sustained through coordinated conduct, rather than competitive market forces. *Id.*

Plaintiff was the first to file a class action complaint alleging the conspiracy summarized above. Plaintiff filed its complaint on November 6, 2025, in the United States District Court for the Southern District of Indiana, where it was assigned to the Honorable Sarah Evans Barker. *See* ECF No. 23. On November 19, 2025, Judge Barker entered an order directing that the action be randomly reassigned to another District Judge. *See* ECF No. 36.

As of November 19, 2025, six class action complaints have been filed regarding the alleged conspiracy summarized above:

- *King Kullen Grocery Co., Inc. v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-02274-SEB-MJD (S.D. Ind.);
- *Nineteenseventynine LLC d/b/a The Breakfast Joynt v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-02301-RLY-MJD (S.D. Ind.);
- *Birchmans Parisian, LLC v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14030 (N.D. Ill.);
- *Edlin v. Cal-Maine Foods, Inc., et al.*, No. 3:25-cv-946 (W.D. Wis.);

---

Hillandale Farms, Inc (together "Hillandale Farms"); and Daybreak Foods, Inc. ("Daybreak Foods").

- *Phil-N-Cindy's Lunch, Inc. v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14082 (N.D. Ill.); and
- *Habash et al. v Urner Barry Publications, Inc., et al.*, No. 1:25-cv-14112 (N.D. Ill.)

For the most part, the Related Actions (*see* Schedule of Related Actions submitted herewith) involve the same Defendants as Plaintiff's Action.[3] Plaintiff's Action and each of the Related Actions alleges that, beginning January 1, 2022, Defendants' conspiracy has artificially increased, fixed, stabilized, or otherwise maintained the price of eggs in the United States in violation of the Sherman Act.

Plaintiff's Action asserts claims on behalf of a putative class of direct purchasers of shell eggs. *See* Complaint at ¶ 200. The plaintiffs in Related Actions *Birchmans Parisian* and *Phil-N-Cindy's Lunch* also sue on behalf of a putative class of direct purchasers. *See* Complaint, ECF No. 1, *Birchmans Parisian, LLC v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14030 (N.D. Ill.), ¶ 148; Complaint, ECF No. 1, *Phil-N-Cindy's Lunch, Inc. v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14082 (N.D. Ill.), ¶ 148. The remaining three Related Actions seek certification of different classes of indirect purchasers and bring claims under various state antitrust and consumer protection statutes. Specifically, the plaintiff in *Nineteenseventynine* brings claims on behalf of a proposed class of indirect purchasers who bought eggs "for their own business use in commercial food preparation." Complaint, ECF No. 1, *Nineteenseventynine LLC d/b/a The Breakfast Joynt v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-02301-RLY-MJD (S.D. Ind.), ¶ 167-68. The plaintiffs in *Edlin* and *Habash* sue on behalf of consumer indirect purchasers. Complaint, ECF No. 1, *Edlin v.*

---

[3] Urner Barry, Egg Clearinghouse, Inc., and United Egg Producers are not named as defendants in the Related Actions *Birchmans Parisian, LLC v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14030 (N.D. Ill.) and *Phil-N-Cindy's Lunch, Inc. v. Cal-Maine Foods, Inc.*, et al., No. 1:25-cv-14082 (N.D. Ill.).

*Cal-Maine Foods, Inc., et al.*, No. 3:25-cv-946 (W.D. Wis.), ¶ 225-28; Complaint, ECF No. 1, *Habash et al. v Urner Barry Publications, Inc., et al.*, No. 1:25-cv-14112 (N.D. Ill.), ¶ 10.

## ARGUMENT

### I. CENTRALIZATION OF PLAINTIFF'S ACTION AND THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407

"When civil actions involving one or more common questions of fact are pending in different districts," the Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should centralize Plaintiff's Action and the Related Actions in a single district—the Southern District of Indiana, for the reasons set forth below—for coordinated or consolidated pretrial proceedings.

#### A. Plaintiff's Action and the Related Actions Involve Common Questions of Fact

For purposes of Section 1407, common questions of fact exist where multiple actions involve common factual questions and can be expected to focus on a significant number of common events, defendants, and/or witnesses. *See e.g.*, *In re: GoodRx and Pharm. Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025) (centralizing related actions where "[t]he actions share overlapping complex issues of fact relating to how the integrated savings program operates, the agreements among GoodRx and the four PBM defendants, the program's impact on independent pharmacies, and the alleged damages."); *In re: Shale Oil Antitrust Litig.*, 743 F. Supp. 3d 1371, 1372 (J.P.M.L. 2024) (centralizing related actions where actions shared defendants and "factual questions arising from an alleged price-fixing conspiracy").

Here, Plaintiff's Action and each Related Action is brought on behalf of purchasers of eggs who were injured by conduct involving a conspiracy to fix, raise, maintain or stabilize retail prices

for eggs in the United States. Plaintiff's Action and the Related Actions involve almost all of the same Defendants, and the Actions assert claims under the federal antitrust laws and/or state analogs.

Taken together, this is sufficient to show that both Plaintiff's Action and the Related Actions involve common questions of fact. *See e.g.*, *In re: Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1362-63 (J.P.M.L. 2024) ("The actions share common questions of fact arising from allegations that Apple has monopolized or attempted to monopolize the smartphone market by controlling the creation and distribution of apps . . . Plaintiffs variously assert virtually identical claims under the Sherman Act, state antitrust and consumer protection laws."); *In re: Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act."); *In re: Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (J.P.M.L. 2024) ("The complaints are substantially similar and, save for Cargill, Inc., name the same defendants. Further, the actions are brought on behalf of overlapping putative nationwide and multistate classes of direct and indirect purchasers of granulated sugar.").

Centralization is therefore appropriate. *See, e.g.*, *In re: Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412, 1413 (J.P.M.L. 2022) (centralizing where all actions asserted that defendants conspired "to limit the supply, and fix the prices, of beef sold in the U.S. wholesale market"); *In re: Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1377 (J.P.M.L. 2018) ("All actions share complex factual questions arising from allegations that defendants engaged in a conspiracy to fix, raise, maintain, or stabilize the price of methylene diphenyl diisocyanate (MDI) and toluene diisocyanate (TDI) sold in the United States . . ."); *In re:*

*Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws.").

> B. **Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of Plaintiff's Action and the Related Actions**

Because there are common factual allegations and legal claims in Plaintiff's Action and the Related Actions, centralization would serve "the convenience of parties and witnesses and will promote the just and efficient conduct" of Plaintiff's Action and the Related Actions. 28 U.S.C. § 1407(a); *see also In re: Shale Oil Antitrust Litig.*, 743 F. Supp. 3d at 1371-72. Moreover, given the likelihood that additional cases will be filed, centralization under Section 1407 now would be the most efficient means of proceeding. *See, e.g., In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions—now pending in three different districts with distinct groups of counsel—will all undoubtedly pursue substantially similar testimony, documents, and other evidence from largely the same Defendants as Plaintiff. Centralizing Plaintiff's Action and the Related Actions will place all actions before a single judge who can efficiently formulate a pretrial program which ensures that discovery and all pretrial proceedings will be conducted in a manner which leads to the efficient and expeditious resolution of all the actions to the benefit of both the parties and the judicial system. *See In re: Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d at 1414 (granting centralization over four coordinated categories of litigation because "[i]f allowed to proceed separately, as requested by movants, the individual direct purchaser actions likely would involve duplicative discovery and potentially inconsistent pretrial rulings."); *In re: Auto Body Shop Antitrust Litig.*, 37

F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.").

In addition, because Plaintiff's Action and each Related Action is a class action, centralization will eliminate the possibility of inconsistent rulings on class certification from courts in multiple districts. *See, e.g.*, *In re: Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d at 1371 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly as to class certification and conserve the resources of the parties, their counsel, and the judiciary.").

For these reasons, the Panel should centralize Plaintiff's Action and the Related Actions in the interests of justice and efficiency.

## II.  THE PANEL SHOULD CENTRALIZE PLAINTIFF'S ACTION AND THE RELATED ACTIONS IN THE SOUTHERN DISTRICT OF INDIANA

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the support of parties for centralization in the district; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Based on consideration of these factors, Plaintiff respectfully submits that the Southern District of Indiana is the most appropriate district in which to centralize these cases.

### A. The Southern District of Indiana is Convenient for the Parties and Witnesses

To honor the policies underlying 28 U.S.C. § 1407, the district chosen to serve as the transferee court should "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re: Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384 (J.P.M.L. 2014).

Centralization in the Southern District of Indiana serves these policy goals. The Southern District of Indiana courthouse in Indianapolis is located less than 20 miles from the Indianapolis International Airport.[4] This airport offers nonstop flights to more than 40 destinations, including major cities across the United States.[5] Indianapolis also provides an abundance of hotels, taxis, and car rental agencies. These options make the Southern District of Indiana accessible and convenient for all parties in Plaintiff's Action and the Related Actions, as well as their counsel and witnesses. *See In re: Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010) (finding that the Southern District of Indiana is a "readily accessible district"). Indiana, known as "the Crossroads of America," is also located near the geographic center of the contiguous United States.

Moreover, relevant witnesses and evidence are likely located in Indiana. Defendant Rose Acre is headquartered in the Southern District of Indiana. Complaint at ¶ 27. Indiana is also among the top five egg-producing states, along with other nearby states Pennsylvania, Iowa, and Ohio. *Id.* at ¶ 75. Further, Plaintiffs for the first two actions on file support centralization in the Southern District of Indiana.

---

[4] https://maps.app.goo.gl/gHz5CPHsodQCkvKc7.
[5] https://www.ind.com/flights.

B. **The Southern District of Indiana is a Favorable Jurisdiction Based on its Experienced Jurists and Docket Conditions**

The Southern District of Indiana has demonstrated experience managing MDLs and other complex litigation. Its current bench includes two veteran transferee judges: Senior Judge Sarah Evans Barker, who led *In re Bridgestone/Firestone, Inc.* (MDL No. 1373), and Senior Judge Richard L. Young, who oversees *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2570). *See In re Cook Medical, Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig*, 53 F. Supp. 3d 1379 (Mem) (J.P.M.L. 2014); *In re Bridgestone/Firestone, Inc.*, MDL No. 1373, 2000 WL 33416573, at *3 (J.P.M.L. Oct. 24, 2000). The remaining judges—Chief Judge James R. Sweeney, Senior Judge Jane E. Magnus-Stinson, Judge Tanya Walton Pratt, Judge James Patrick Hanlon, and Judge Matthew P. Brookman—have routinely handled, for example, tag-along actions and nationwide class actions that mirror MDL case-management demands. *See, e.g.*, *In re Midwestern Pet Foods Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:21-cv-00007 (S.D. Ind.) (Brookman, J.). Collectively, the bench brings deep expertise in coordinating large discovery records, supervising complex pretrial proceedings, and managing high-volume litigation.

The Southern District of Indiana also has favorable docket conditions, which will allow it to efficiently manage the centralized proceedings. As of November 3, 2025, there was only one MDL pending in the Southern District of Indiana, compared to twelve in the Northern District of Illinois.[6]

---

[6] MDL Statistics Report - Distribution of Pending MDL Dockets by District, U.S. Judicial Panel on Multidistrict Litig. (Nov. 3, 2025), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel order that the Plaintiff's Action and the Related Actions, as well as all subsequent tag-along-actions, be transferred to and centralized in the Southern District of Indiana for consolidated or coordinated pretrial proceedings.

Dated: November 19, 2025

Respectfully submitted,

/s/ David E. Kovel
David E. Kovel
Thomas W. Elrod
Lauren Wands
James Isacks
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, NY 10177
(212) 371-6600
dkovel@kmllp.com
telrod@kmllp.com
lwands@kmllp.com
jisacks@kmllp.com

Robert J. Gralewski, Jr.
**KIRBY McINERNEY LLP**
1420 Kettner Boulevard, Suite 100
San Diego, CA 92101
(858) 834-2044
bgralewski@kmllp.com

Gregory S. Asciolla
Alexander E. Barnett
Jonathan S. Crevier
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
gasciolla@dicellolevitt.com
abarnett@dicellolevitt.com
jcrevier@dicellolevitt.com

Heidi M. Silton
Jessica N. Servais
Joseph C. Bourne
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com

Irwin B. Levin
Scott D. Gilchrist
Edward B. Mulligan V
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ilevin@cohenandmalad.com
sgilchrist@cohenandmalad.com
nmulligan@cohenmalad.com

*Attorneys for King Kullen Grocery Co., Inc. and the Proposed Class*

11