BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: SHELL EGGS ANTITRUST LITIGATION | MDL No. 3175 |

*EDLIN* AND *PRICE* PLAINTIFFS' RESPONSE
TO PLAINTIFF KING KULLEN GROCERY CO., INC.'S MOTION TO TRANSFER

Plaintiffs Matthew Edlin[1], India Price, Lakia Session, and Karen Solomon[2] (collectively, the "Wisconsin Plaintiffs") respectfully submit this response to Plaintiff King Kullen Grocery Co., Inc.'s ("Movant") Motion to Transfer and Coordination or Consolidation under 28 U.S.C. § 1407. The Wisconsin Plaintiffs agree that centralization and transfer are appropriate but respectfully submit that the most appropriate district for centralization is the Western District of Wisconsin, which is home to the U.S. headquarters of one of the defendants named in all the related actions, has assigned an experienced and highly qualified judge to this case (Chief Judge James D. Peterson), currently has no pending multidistrict litigations, and has the lowest congestion of all of the proposed transferee venues.

**I.    BACKGROUND**

As explained in Movant's Memorandum in Support, this litigation comprises several factually and legally overlapping class actions regarding an alleged conspiracy by Defendants to artificially increase, fix, stabilize, or otherwise maintain the prices of conventional shell eggs in

---

[1] Mr. Edlin is the plaintiff in *Edlin v. Cal-Maine Foods, Inc., et al.*, No. 3:25-cv-00946 (W.D. Wis.).

[2] Ms. Price, Ms. Session, and Ms. Solomon are the plaintiffs in *Price et al. v. Cal-Maine Foods, Inc., et al.*, No. 3:25-cv-01016 (W.D. Wis.). *Price* is a potential related action. *See* Notice of Related Action filed December 12, 2025 (Dkt. No. 34).

the United States. ECF No. 1-1 ("Mem.") at 1-4. These related actions are brought on behalf of direct and indirect purchasers of conventional shell eggs in the United States from January 1, 2022, to the present, and assert claims under federal antitrust and, in some cases, state antitrust and consumer protection laws. *Id.* at 2-4. There are currently eight related actions before the Panel, with four pending in the Northern District of Illinois, two in the Southern District of Indiana, and two in the Western District of Wisconsin.

The conventional shell egg market in the United States is controlled by a handful of companies, including Defendants Cal-Maine, Rose Acre, Versova, Hillandale Farms, and Daybreak Foods (hereinafter, the "Egg Producer Defendants").[3] ¶ 1.[4] Egg Producer Defendants are the five biggest egg producers in the United States and collectively own almost half of all egg-laying commercial hens. ¶ 4. Plaintiffs in the related actions allege that beginning in or around January 1, 2022 and continuing through present (the "Class Period"), Egg Producer Defendants engaged in a conspiracy together with Defendants Urner Barry Publications, Inc. ("Urner Barry"), Egg Clearinghouse, Inc. ("ECI"), United Egg Producers ("UEP"), and John Does 1-10 (altogether, "Defendants") by agreeing to artificially raise, fix, maintain, or stabilize prices of conventional shell eggs in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and various state antitrust and consumer protection laws. ¶¶ 17, 260-310. This conspiracy was carried out through Defendants' sharing of accurate, competitively sensitive, nonpublic information with

---

[3] This suit was filed against these five egg producers in the United States and their affiliates: Cal-Maine Foods, Inc. ("Cal-Maine"); Rose Acre Farms, Inc. ("Rose Acre"); Versova Holdings, LLC ("Versova"); Hillandale Farms, which is comprised of Hillandale Farms of Pa., Inc., Hillandale-Gettysburg, LLC, Hillandale Farms East, Inc., and Hillandale Farms, Inc. (together, "Hillandale Farms"); and Daybreak Foods, Inc. ("Daybreak Foods"). ¶ 1.

[4] All "¶" references are to paragraphs in the Complaint filed in the *Edlin v. Cal-Maine Foods* action, No. 3:25-cv-00946, Dkt. No. 1 (W.D. Wis. Nov. 14, 2025).

each other for no economically rational reason other than to effectuate their agreement to artificially affect prices and avoid competing with one another. *Id*.

As part of their unlawful agreement, the Egg Producer Defendants reported inflated "assessment[s]" of egg prices to Urner Barry, which then published price quotes using the subjective information provided by its subscribers, including the Egg Producer Defendants. ¶ 6. It also incorporated transaction prices from an online spot market provided by ECI which, due to its relatively small size, the Egg Producer Defendants were easily able to influence on both volume and pricing. ¶¶ 6-7. Urner Barry's price quotes serve as a benchmark for the pricing for 95% of conventional shell egg sales. ¶ 129. Thus, Defendants were able to manipulate the Urner Barry quotes to amplify price swings led by the largest-volume producers and prevent independent competitive decision-making by others, thereby sustaining ever-increasing price hikes on their customers. ¶¶ 8-10.

Conventional shell egg prices have significantly increased during the Class Period, in a way that cannot be explained by changes in input costs and supply. ¶¶ 133-56. There is no economic rationale for the rate of price increases. *Id*. These significant price increases for conventional shell eggs are the result of Defendants' anticompetitive conduct. ¶ 199.

## II.   ARGUMENT

The Wisconsin Plaintiffs agree with Movant that centralization is warranted under 28 U.S.C. § 1407.[5] The related actions involve common questions of fact and centralization would serve the convenience of parties and witnesses and promote the just and efficient conduct of this litigation. Mem. at 4-7.

---

[5] The plaintiffs in the only other consumer indirect purchaser related action in this MDL, *Habash, et al. v. Cal-Maine Foods, Inc., et al.*, No. 1:25-cv-14112 (N.D. Ill.), also support the Western District of Wisconsin as a transferee district.

3

The Western District of Wisconsin is the most appropriate transferee district. To begin, the Western District of Wisconsin is centrally located with respect to much of the evidence that will be relevant in this case. Daybreak Foods is headquartered in the Western District of Wisconsin, meaning that relevant witnesses and documents will likely be found there. *See In re UICI "Ass'n Group" Ins. Litig.*, 305 F. Supp. 2d 1360, 1362 (J.P.M.L. 2004) ("[T]he location of the moving defendants' headquarters within the Northern District of Texas implies that relevant witnesses and documents are likely to be found there."); *cf. In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (selecting district in part due to "the presence of two of the largest domestic producers of hydrogen peroxide—both of which are named as defendants—within blocks of the federal courthouse"). The Western District of Wisconsin has a further nexus to this docket given that Cal-Maine has two operating locations in Wisconsin and ships to customers in the state.⁶ The Western District of Wisconsin also borders Iowa, where Rose Acre maintains egg production facilities and Versova is headquartered. ¶¶ 28, 31. The fact that one defendant has its headquarters in the district and "several of the defendants maintain a presence in or near that district" is a sufficient reason to centralize in the Western District of Wisconsin. *See In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008); *see also In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) ("One defendant has its U.S. headquarters in this district, and five other defendants have their headquarters in adjacent or nearby districts. Relevant documents and witnesses therefore are likely to be located in or close to this area.").

The Western District of Wisconsin is also a geographically convenient forum for parties and witnesses. Madison, Wisconsin's Dane County Regional Airport is just four miles from the

---

⁶ https://www.calmainefoods.com/locations.

federal courthouse, with many nonstop daily flights to hubs across the country including Chicago, New York, Atlanta, and Philadelphia.[7] And because the first related action was very recently filed (in November 2025), "none of the cases has advanced so far since their filing as to give any particular district unique insight or knowledge of this controversy." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369 (J.P.M.L. 2015) (cleaned up).

Furthermore, the Western District of Wisconsin "enjoys favorable docket conditions" compared to the other districts where related actions are pending. *In re: Wright Med. Tech., Inc., Conserve Hip Implant Prod. Liab. Litig.*, 844 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012). Whereas the median length from the filing of a civil case to trial is 22.9 months in the Western District of Wisconsin, the median length is 56.4 months for the Northern District of Illinois and 36.9 months for the Southern District of Indiana.[8] Only 4.1% of cases in the Western District of Wisconsin are over three years old, compared to 10.9% in the Northern District of Illinois and 62% in the Southern District of Indiana.[9] Further, the Western District of Wisconsin currently has no pending multidistrict litigations while the Northern District of Illinois has twelve and the Southern District of Illinois has one.[10] The Western District of Wisconsin is thus a "convenient and readily

---

[7] *See* https://www.msnairport.com/flight_travel/where (last visited Dec. 15, 2025).

[8] https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf (last visited Dec. 15, 2025). Note that these statistics reflect docket conditions as of June 30, 2025, since that is the most recent data available from all three of the districts where related actions are pending.

[9] *Id.*

[10] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-2-2025.pdf (last visited Dec. 15, 2025). Note that these statistics reflect docket conditions as of December 2, 2025, since that is the most recent data available from all three of the districts where related actions are pending.

5

accessible district that is underutilized as a transferee forum," weighing in favor of transfer. *In re Tasigna (Nilotinib) Prod. Liab. Litig.*, 555 F. Supp. 3d 1363, 1365 (J.P.M.L. 2021); *In re: Groupon, Inc., Mktg. & Sales Pracs. Litig.*, 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011) ("Our choice is the Southern District of California because it is a relatively underutilized transferee district that is located in an accessible metropolitan area."); *In re: Panacryl Sutures Prod. Liab. Litig.*, 572 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) ("Given that this litigation involves nine actions pending in federal districts throughout the United States, we have decided to centralize this docket in the Eastern District of North Carolina, where two actions are pending and which, in the past, has been underutilized as a transferee district.").

The Western District of Wisconsin has two highly qualified district judges, either of whom would be an excellent transferee judge. Assigning the MDL to a judge in the Western District of Wisconsin will provide one of two "experienced jurist[s] who [have] not yet had the opportunity to preside over an MDL" an opportunity to do so. *See In re Keffer Dev. Servs., LLC, Data Sec. Breach Litig.*, No. MDL 3159, 2025 WL 2327173, at *2 (J.P.M.L. Aug. 8, 2025); *see also In re GoodRx & Pharmacy Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025); *In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*, 753 F. Supp. 3d 1365, 1367 (J.P.M.L. 2024).

Conveniently located regarding both the evidence and the parties, having a strong nexus to Defendants, and experienced jurists, the Western District of Wisconsin is the most appropriate transferee district. The Wisconsin Plaintiffs respectfully submit that this litigation should be centralized there. The Northern District of Illinois or Southern District of Indiana are also appropriate alternative districts.

III.  **THE MULTIDISTRICT LITIGATION SHOULD BE ASSIGNED TO JUDGE JAMES D. PETERSON**

Chief U.S. District Judge James D. Peterson currently presides over the *Edlin* and *Price* cases in the Western District of Wisconsin. He has been a district court judge for over 10 years and has been the chief judge since 2017. He has presided over antitrust cases and numerous other class actions, including MDL-related proceedings. Recently, he presided over *Loop LLC v. CDK Global, LLC*, 3:24-cv-00571 (W.D. Wis.), which was part of *In Re: Dealer Management Systems Antitrust Litigation*, MDL 2817—an antitrust MDL alleging a massive price-fixing conspiracy between two leading providers of auto dealership management software. The MDL consisted of dozens of cases brought on behalf of auto dealerships, vendors, and independent data integrators. After pretrial proceedings concluded, *Loop* was transferred back to Judge Peterson on August 14, 2024, to prepare for trial between Plaintiff Loop LLC, a vendor, and one of the members of the alleged conspiracy, CDK Global, LLC. On January 13, 2025, during the course of trial preparation, the case settled. Judge Peterson has managed the approval of the settlement, and granted final approval on September 10, 2025. Judge Peterson's recent experience with an MDL-related price-fixing case makes him particularly well suited to handle this MDL.

The Western District of Wisconsin also has another highly qualified jurist, District Judge William M. Conley, who has been a district court judge for over 15 years and served as chief judge from 2010 to 2017. Prior to ascending to the bench, Judge Conley worked on antitrust matters, wrote a chapter of the *CCH Product Distribution Law Guide* on antitrust issues, and presented in various seminars on antitrust law.[11] He has presided over antitrust cases as well as a number of class action lawsuits, and would also be an excellent choice.

---

[11] https://www.judiciary.senate.gov/imo/media/doc/WilliamConley-PublicQuestionnaire.pdf

## IV. CONCLUSION

For the foregoing reasons, the Wisconsin Plaintiffs respectfully request that the Panel centralize the related actions in the Western District of Wisconsin.

Dated: December 15, 2025

Respectfully submitted,

/s/ Andrew Chan Wolinsky
Andrew Chan Wolinsky (NY 4892196)
BATHAEE DUNNE LLP
445 Park Ave., 9th Floor
New York, NY 10022
awolinsky@bathaeedunne.com
(332) 208-7337

*Counsel for* Edlin *Plaintiffs and* Price *Plaintiffs*

8