**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| |
|---|
| IN RE: SHELL EGGS ANTITRUST LITIGATION |

MDL No. 3175

**ILLINOIS DIRECT PURCHASER PLAINTIFFS' RESPONSE TO MOTION FOR
<u>TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiffs Birchmans Parisian, LLC and Phil-N-Cindy's Lunch, Inc. ("Illinois Direct Purchaser Plaintiffs") respectfully submit this Memorandum of Law in response to Plaintiff King Kullen Grocery Store Inc.'s Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (the "Motion to Transfer"). The Illinois Direct Purchaser Plaintiffs support the consolidation of these matters but suggest that they be transferred to the Northern District of Illinois, rather than the Southern District of Indiana, as sought in the original Motion to Transfer.

I.    **PRELIMINARY STATEMENT**

The Illinois Direct Purchaser Plaintiffs agree that centralization of the related actions is appropriate. However, the Illinois Direct Purchaser Plaintiffs respectfully submit that the Northern District of Illinois is the most appropriate and convenient forum for the parties to the Related Actions.

*First,* the Northern District of Illinois is uniquely tied to this litigation. The Department of Justice's Antitrust Division Chicago field office is leading the investigation of egg producers relating to the underlying allegations that form the core of the Related Actions.

*Second,* the first-filed action in the Northern District of Illinois is assigned to Judge Steven C. Seeger. Judge Seeger is an experienced jurist who has presided over prior related antitrust litigation concerning egg prices, against certain of the same Defendants, culminating in a jury trial in 2023 (post-trial motions remain pending). Judge Seeger's deep experience with the issues and facts at issue in the Related Actions warrant transfer to the Northern District of Illinois and cannot be replicated by another forum.

*Third,* the Northern District of Illinois is a well-resourced forum that is the most convenient among the fora where the Related Actions have been filed. The Northern District of Illinois offers more direct flights and accessibility than the Southern District of Indiana or the Western District of Wisconsin. Where the actions and parties are geographically dispersed, and no one district is the focal point of the litigation, the Panel has recognized the need to pick an accessible and geographically central forum. *See, e.g.*, *In re McDonald's French Fries Litig.*, 444 F. Supp.2d 1342, 1343 (J.P.M.L. 2006) ("[G]iven the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation."), *adhered to* 545 F. Supp.2d 1356 (J.P.M.L. 2008). Here, that forum is the Northern District of Illinois.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Related Actions each allege a nationwide conspiracy orchestrated by the dominant producers of conventional shell eggs ("Shell Eggs" or "eggs") in the United States to artificially inflate the prices of eggs. There are now eight pending Related Actions, with the plurality filed in the Northern District of Illinois—the district where the Chicago field office of the U.S. Department of Justice is leading the antitrust investigation of U.S. egg producers. The Related Actions arise out of the same core facts and claims: the egg producer defendants agreed to exploit an outbreak of Avian Influenza for the purpose of artificially raising prices in violation of Section 1 of the Sherman Act and/or state antitrust laws.

The primary difference among the Related Actions is that some of the Related Actions are brought on behalf of Direct Purchasers seeking damages under the Sherman and Clayton Acts, while other actions are brought on behalf of Indirect Purchasers seeking damages under various state antitrust and consumer protection laws. Cases brought by differently situated plaintiffs

arising from the same conduct are common in antitrust litigation, and the JPML routinely transfers antitrust cases grounded in the same common facts, but that assert claims on behalf of different proposed classes. *See, e.g.*, *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 737 F. Supp.3d 1364, 1365 (J.P.M.L. 2024); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp.3d 1361 (J.P.M.L. 2014).

Counsel for the Illinois Direct Purchaser Plaintiffs have conferred with counsel for the plaintiffs in the actions filed in the Southern District of Indiana and the Western District of Wisconsin regarding consolidation and transfer of the various actions. Those efforts to avert an MDL were not successful. Counsel for the Illinois Direct Purchaser Plaintiffs will continue to work collaboratively with all other counsel and plan to continue to have discussions with those other groups of counsel.

## III.    ARGUMENT

### A.  Centralization Under 28 U.S.C. § 1407 Is Appropriate

Illinois Direct Purchaser Plaintiffs agree that transfer of the Related Actions to one court for coordination is appropriate under 28 U.S.C. § 1407. There is no dispute that the Related Actions share common questions of fact and involve similar legal issues, warranting centralization. *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp.3d 1358, 1359 (J.P.M.L. 2020) ("[T]he Panel frequently centralizes litigations involving differently-situated plaintiffs and differently-defined putative classes, where, as here, all actions arise from a common factual core."). Centralization will serve the convenience of parties and promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters and dispositive motions. *See In re Multiplan Health Ins. Provider Litig.*, 743 F. Supp.3d 1376, 1377 (J.P.M.L. 2024) (finding that centralization would "prevent inconsistent

pretrial rulings, in particular as to class certification"); *In re Baby Food Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 730 F. Supp.3d 1371, 1373 (J.P.M.L. 2024) (holding that centralization will eliminate the potential for inconsistent pretrial rulings, "particularly with respect to expert admissibility and other dispositive issues"). Therefore, the Panel should centralize the Related Actions under 28 U.S.C. § 1407.

### B.   The Panel Should Centralize the Related Actions in the Northern District of Illinois, Rather Than in the Southern District of Indiana

In determining the appropriate transferee district, the Panel considers a variety of factors, including: whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; the location of "relevant witnesses and evidence"; the stated preferences of the parties; and the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *See In re Aggrenox Antitrust Litig.*, 11 F. Supp.3d 1342, 1343 (J.P.M.L. 2014). These factors all support transfer to the Northern District of Illinois.

#### 1.   The Northern District of Illinois Is the Most Convenient and Accessible Forum

Where an MDL involves parties and witnesses that are geographically dispersed, this Panel has often held that the Northern District of Illinois is an appropriate transferee district because it is centrally located and is one of the most accessible districts in the nation. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp.3d 1375, 1378 (J.P.M.L. 2016) ("We are persuaded that the Northern District of Illinois is the appropriate transferee district for this litigation. This district provides a convenient and accessible forum for actions filed throughout the country regarding products sold nationwide."); *In re Am. Online, Inc.*, 162 F. Supp.2d 690, 691 (J.P.M.L. 2001) (the Northern District of Illinois is a "geographically central district [and] will be a convenient location for a litigation already nationwide in scope").

5

Here, the Defendants are geographically dispersed, Plaintiffs are located nationwide, and the affected product—Shell Eggs—was sold nationwide. The nationwide scope of this litigation weighs in favor of transfer to the Northern District of Illinois. The Northern District of Illinois "offers a geographically central and readily accessible forum for this nationwide litigation." *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp.3d 1350, 1351 (J.P.M.L. 2022); *In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 408 F. Supp.2d 1354, 1355 (J.P.M.L. 2005) ("The Panel has thus determined that the Northern District of Illinois is an appropriate transferee district for this litigation. . . . [T]his geographically central district will be a convenient location for a litigation already nationwide in scope.").[1]

Chicago is centrally located and is one of the most accessible cities in the nation, with two major airports and daily nonstop flights between more than 170 destinations from O'Hare and 78 U.S. destinations from Midway.[2]  Chicago is also a central location when considering where defendants are located. At least two defendants, Rose Acre Farms, Inc. and Daybreak Foods, Inc.,

---

[1]     *See also In re Loc. TV Advert. Antitrust Litig.*, 338 F. Supp.3d 1341, 1343 (U.S. Jud. Pan. Mult. Lit. 2018) (transfer to N.D. Ill.; N.D. Ill. "geographically central and convenient location"); *In re Delta Dental Antitrust Litig.,* 433 F. Supp.3d 1358, 1359 (U.S. Jud. Pan. Mult. Lit. 2020) (transfer to N.D. Ill.; "Northern District of Illinois a geographically central and accessible forum for this nationwide litigation"); *In re Dealer Mgmt. Sys. Antitrust Litig.,* 291 F. Supp.3d 1367, 1369 (U.S. Jud. Pan. Mult. Lit. 2018) (transferring to N.D. Ill.; "The district is a central, readily accessible venue for all parties."); *In re: Opana ER Antitrust Litig.,* 65 F. Supp.3d 1408, 1409 (U.S. Jud. Pan. Mult. Lit. 2014) (transfer to N.D. Ill.; "provides a geographically central forum for this nationwide litigation that will be convenient and accessible for the parties and witnesses"); *In re: Text Messaging Antitrust Litig.*, 588 F. Supp.2d 1372, 1373 (U.S. Jud. Pan. Mult. Lit. 2008) (transfer to N.D. Ill.; "provides a relatively central forum for this nationwide litigation").

[2]     *See*     O'Hare     International     Airport:     Non-stop     Service, https://www.flychicago.com/ohare/myflight/non-stop/pages/default.aspx (last visited Dec. 15, 2025);     Non-stop     Service:     Chicago     Midway     International     Airport     (MDW), https://www.flychicago.com/midway/myflight/non-stop/pages/default.aspx (last visited Dec. 15, 2025).

have significant operations within Illinois. The Defendants' headquarters are scattered across Mississippi, Indiana, Ohio, Iowa, and Wisconsin. Chicago is centrally located with respect to Defendants' respective headquarters. The centrality and accessibility of Chicago will maximize convenience and efficiency for both parties and witnesses.

The Southern District of Indiana is far less accessible. The Indianapolis International Airport offers non-stop flights from only approximately 40 cities.[3] While Plaintiff King Kullen touts that Indiana is nicknamed the "Crossroads of America" (Mem. at 8), it has this nickname because of the convergence of major interstate *highways*,[4] which will not provide convenience for the many Parties located far from Chicago, who will fly. Flying to Indianapolis is not nearly as convenient as flying to Chicago. There is no non-stop flight between Sioux City, Iowa, where Defendant Versova is headquartered, and Indianapolis, while there is a non-stop flight between Sioux City and Chicago.[5] Likewise, Harrisburg International Airport, the closest airport to Gettysburg, Pennsylvania, where Defendant Hillandale Farms is headquartered, has a direct flight to Chicago but no direct flight to Indianapolis.[6] The Dane County Regional Airport, the closest airport to Defendant Daybreak's headquarters in Lake Mills, Wisconsin, also has a direct flight to Chicago, but not Indianapolis,[7] and Lake Mills to Chicago is just over two hours by car. These

---

[3]      *See* Indianapolis International Airport, *Flights*, https://www.ind.com/flights. Madison, Wisconsin's Dane County Regional Airport has direct flights to only 17 U.S. cities. Dane County Regional Airport, *Where we Fly,* https://www.msnairport.com/flight_travel/where (last visited Dec. 15, 2025).

[4]      *See* Indiana Historical Bureau, *Crossroads of America,* https://www.in.gov/history/state-historical-markers/find-a-marker/crossroads-of-america/ (last visited Dec. 15, 2025).

[5]      Sioux Gateway Airport, https://flysux.com/ ("Flights daily to Chicago and Denver")

[6]      *See* Harrisburg International Airport, *Nonstop Route Map,* https://www.flyhia.com/flight-airline-information/nonstop-route-map/ (last visited Dec. 15, 2025).

[7]      Dane County Regional Airport Madison, *Where we Fly,* https://www.msnairport.com/flight_travel/where (last visited Dec. 15, 2025).

case-specific considerations demonstrate that the Northern District of Illinois is the most convenient forum.

### 2. The Northern District of Illinois is likely to contain significant evidence and witnesses relevant to the Related Actions.

The Chicago field office of the U.S. Department of Justice, Antitrust Division is currently investigating certain of the defendants in the Related Actions for possible antitrust violations in the egg market. *See* Yassin Qanbar, *Why Are Egg Producers Under DOJ Scrutiny? A Price Fixing Crisis*, RAIN INTELLIGENCE (Mar. 28, 2025), *available at* https://www.rainintelligence.com/blog/why-are-egg-producers-under-doj-scrutiny (last visited Dec. 15, 2025). The DOJ's Chicago office is investigating whether the nation's largest egg producers (*i.e.*, the defendants in the Related Actions) are conspiring to keep prices high. *Id.* The investigation involves, at least, Defendants Cal-Maine foods, Inc. and Rose Acre Farms, Inc. *Id.*

This Panel has recognized that selecting a transferee district where a government investigation is ongoing "may also provide efficiencies in the pretrial proceedings of the private lawsuits." *In re: Polyurethane Foam Antitrust Litig.*, 753 F. Supp.2d 1376, 1378 (J.P.M.L. 2010) (transferring cases to district where "grand jury proceedings and government investigation" were ongoing); *see also In re: Mun. Derivatives Antitrust Litig.*, 560 F. Supp.2d 1386, 1387 (J.P.M.L. 2008) (transferring action to district where, among other things, "the government investigation is ongoing . . . , and relevant documents and witnesses are likely to be found there"); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp.2d 1346, 1347 (J.P.M.L. 2004) ("The presence of the government investigation and federal grand jury in the [district] also tilts toward centralization in the [district].").

Where government investigations or cases precede multiple private class actions, the Panel routinely selects the district where the government action is pending as the transferee district. *See,*

*e.g., In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) ("We are persuaded that the Northern District of Illinois is the appropriate transferee forum for this litigation. . . . the Northern District of Illinois is the situs of an ongoing grand jury investigation '); *In re Folding Carton Antitrust Litig.*, 415 F. Supp. 384, 386 (J.P.M.L. 1976) ("Transfer to [the Northern District of Illinois] will best facilitate the coordination that will no doubt be necessary between the private actions and the seminal Government criminal and civil actions which are pending in Illinois.").[8]

In addition to the DOJ investigation, other events relevant to the Related Actions occurred in the Northern District of Illinois. For example, Urner Barry—a pricing and data service, whose Urner Barry egg index Defendants are alleged to have manipulated—held its Global Protein

---

[8]     *See also In re Qualcomm Antitrust Litig.*, 273 F. Supp.3d 1373, 1376 (J.P.M.L. 2017) (transfer to district where FTC civil enforcement action was pending); *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 222 F. Supp.3d 1341, 1344 (J.P.M.L. 2017) (centralization where DOJ investigation pending); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp.3d 1382, 1383 (J.P.M.L. 2016) (transfer to District where "related criminal action is pending"); *In re Toilet Seat Antitrust Litig.*, 387 F. Supp. 1342, 1344 (J.P.M.L. 1975) (transfer to district of where government civil action located); *In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp.2d 1370, 1371 (J.P.M.L. 2013) ("Relevant grand jury proceedings also are reportedly underway in this district."); *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp.2d 1376, 1378 (J.P.M.L. 2010) ("The presence of the grand jury proceedings and government investigation in the Northern District of Ohio, albeit in a different division than the civil actions are pending, may also provide efficiencies in the pretrial proceedings of the private lawsuits."); *In re Optical Disk Drive Prods. Antitrust Litig.*, 701 F. Supp.2d 1382, 1383 (J.P.M.L. 2010) ("Relevant grand jury proceedings are also underway in this district."); *In re Mun. Derivatives Antitrust Litig.*, 560 F. Supp.2d 1386, 1387 (J.P.M.L. 2008) (transfer to district where "government investigation is ongoing"); *In re Packaged Ice Antitrust Litig.*, 560 F. Supp.2d 1359, 1361 (J.P.M.L.2008) ("Eastern District of Michigan than in any other district. Additionally, the grand jury investigating the packaged ice industry is based in this district."); *In re Marine Hose Antitrust Litig. (No. II)*, 531 F. Supp.2d 1381, 1382 (U.S. Jud. Pan. Mult. Lit. 2008) ("Southern District of Florida is an appropriate transferee district for pretrial proceedings . . . where a grand jury investigation into the marine hose industry is underway.); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp.2d 1346, 1347 (J.P.M.L. 2004) (The presence of the government investigation and federal grand jury in the Southern District of Ohio also tilts toward centralization in the Southern District of Ohio.").

Summit in Chicago in October 2022. The Summit was attended by hundreds of executives, including those from the large egg producers, and included panels discussing Avian Flu and how it might impact supply, demand, and pricing for eggs. Expana, which acquired Urner Barry, also held its Agri-food Americas 2024 Conference in Chicago. That conference included executives from the major egg producers and had panels and discussions related to egg pricing, including a "price forecasting power hour." These industry-wide connections to Chicago make clear that the Northern District of Illinois is the crossroads of the egg business and would be a convenient district with relevant connections to the litigation.

### 3. The Northern District of Illinois is well-resourced and has extensive experience with complex litigation, including food and agricultural products litigation.

If the Panel grants centralization of the Related Actions, the Northern District of Illinois is the appropriate transferee forum. The Northern District of Illinois is one of the most experienced MDL transferee districts[9] and, yet, there are several active judges in that district that are not presently presiding over an MDL.[10] The Northern District of Illinois is also one of the most efficient[11] districts at resolving civil litigation, with a substantially shorter median time from filing

---

[9]     *See* JPML – Cumulative Terminated MDLs 2023, available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2023_Terminated_Litigations_Report_0.pdf.

[10]     MDL Statistics Report, JPML (Nov. 3, 2025), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf.

[11]     While Plaintiff King Kullen points out that the Southern District of Indiana is assigned only one MDL, it only has seven Article III judges (including three on senior status), compared to thirty-four Article III judges in the Northern District of Illinois. *See* United States District Court, Southern District of Indiana, *District Judges,* https://www.insd.uscourts.gov/district-judges (last visited Dec. 15, 2025); United States District Court, Northern District of Illinois, *Judges of the Northern District of Illinois,* https://www.ilnd.uscourts.gov/judges.php (last visited Dec. 15, 2025).

to disposition (7.1 months) than the Southern District of Indiana (12.2 months).[12]

The Northern District of Illinois has also presided over many MDLs and other complex matters involving food and agricultural products. *See, e.g.*, *In re Turkey Antitrust Litigation*, No. 19-cv-08318 (N.D. Ill.); *Jien, et al. v. Perdue Farms, Inc., et al.*, No. 19-cv-00252, MDL No. 3030 (N.D. Ill.); *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.); *In Re: 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, No. 16-cv-05802, MDL No. 2705 (N.D. Ill.); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, No. 09-cv-03690, MDL No. 2031 (N.D. Ill.).  This experience makes the Northern District of Illinois an ideal transfer forum.

These resources show that transfer to the Northern District of Illinois would further the goals of the MDL process. *See* Manual for Complex Litigation § 20.131 (4th ed. 2004) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").

### 4. Judge Seeger has experience with related litigation that supports transfer to the Northern District of Illinois, as do many other judges in the district.

The first-filed and lowest-numbered of the three Related Actions pending in the Northern District of Illinois has been assigned to Judge Steven C. Seeger.  Judge Seeger has recent experience with related antitrust actions involving price-fixing of eggs and some of the same defendants named in the Related Actions—United Egg Producers, Inc., Cal-Maine Foods, Inc., Daybreak Foods, Inc., Hillandale Farms of Pa, Inc., and Rose Acre Farms, Inc.  In 2023, Judge

---

[12]    U.S. District Courts-Civil Judicial Business (Table C-5), USCourts.gov (June 30, 2025), https://www.uscourts.gov/data-news/data-tables/2025/06/30/statistical-tables-federal-judiciary-c-5 (last visited Ded. 15, 2025).

Seeger presided over a five-week liability trial and a separate damages trial against Cal-Maine Foods, Inc. and Rose Acre Farms, Inc. *See Kraft Foods Global Inc., et al., v. United Egg Producers Inc., et al.*, No. 11-cv-8808 (N.D. Ill.).  Post-trial motions in that action remain pending.

If the Panel were to transfer the Related Actions to the Northern District of Illinois and assign the MDL to Judge Seeger, it would further the goals of judicial efficiency and expeditious conclusion of this litigation.  The Panel has previously recognized that transferring litigation to the district where the presiding judge has familiarity with the subject matter of the action at issue or of related litigation will further the efficiency goals that animate 28 U.S.C. 1407.  *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 290 F. Supp.2d 1376, 1378 (J.P.M.L. 2003) (assigning MDL to a judge familiar with the issues presented "as a result of his previous experience in presiding over" a related MDL); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp.2d 1373, 1374 (J.P.M.L. 2002) (assigning MDL to a judge familiar with the allegations at issue "as a result of presiding over a related predecessor action").  Transferring the Related Actions to the Northern District of Illinois would allow them to be assigned to Judge Seeger, a judge who is not currently presiding over any MDL[13] and who has extensive experience and expertise with the subject matter of the litigation.

One of the other Related Actions pending in the Northern District of Illinois has been assigned to Judge Edmond E. Chang, an experienced jurist who is also not currently presiding over any MDL.[14]  Judge Chang has experience with both MDLs and complex antitrust litigation. *See*

[13]     MDL Statistics Report – Distribution of Pending MDL Dockets by District, J.P.M.L. (Nov. 3, 2025),  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf (last visited Dec. 15, 2025).

[14]     MDL Statistics Report – Distribution of Pending MDL Dockets by District, J.P.M.L. (Nov. 3, 2025),  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf (last visited Dec. 15, 2025).

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp.3d 1359, 1363 (J.P.M.L. 2020) (assigning Judge Chang to preside over an MDL and noting that, "We are confident that Judge Edmond E. Chang, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course."); *see also In re FICO Antitrust Litigation*, No. 24-cv-4962 (N.D. Ill.) (Chang, J.); *In re Northshore University HealthSystem Antitrust Litigation*, No. 07-cv-04446 (N.D. Ill.) (Chang, J.).

The third Related Action pending in the Northern District of Illinois has been assigned to Judge Sharon Johnson Coleman.  Judge Coleman is also an experienced jurist who has presided over MDLs and complex antitrust cases.  *See, e.g.*, *In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp.3d 1368, 1370 (J.P.M.L. 2020) (assigning Judge Coleman to preside over the MDL); *Viamedia, Inc. v. Comcast Corporation, et al.*, No. 16-cv-05486 (N.D. Ill.) (Coleman, J.). While the Panel's Pending MDLs report still lists Judge Coleman as presiding over the *Clearview AI* MDL, that MDL has been resolved and Judge Coleman granted final approval of a settlement in that matter.  *See In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-00135, 2025 WL 1371330, at *1 (N.D. Ill. May 12, 2025).

Any of these Northern District of Illinois judges, who each have experience with complex litigation, would provide efficient leadership over the Related Actions.[15]

### 5. If the Panel does not Transfer the Related Actions to the Northern District of Illinois, the Western District of Wisconsin is the Next Most Appropriate Forum

If the Panel does not transfer the Related Actions to the Northern District of Illinois, which is the most appropriate and convenient forum for centralization, the Illinois Direct Purchaser

---

[15]     Many other judges in the Northern District of Illinois have similar experience with complex antitrust litigation and are not currently presiding over MDLs.

Plaintiffs submit that the Western District of Wisconsin is a more appropriate forum than the Southern District of Indiana.

The Western District of Wisconsin is easily accessed through the Dane County Regional Airport in Madison and the Milwaukee Mitchell International Airport and has no pending MDLs. It has a lower average time from filing to disposition (7.0 months) than the Southern District of Indiana (12.2 months). The action pending in the Western District of Wisconsin is not yet assigned to either of the two Article III judges in the district, who are both experienced and capable jurists with antitrust experience. Chief Judge James Peterson was appointed in 2014 and has served as Chief Judge from 2017-Present.[16] Chief Judge Peterson has presided over antitrust cases including *Loop LLC v. CDK Glob., LLC*, No. 24-CV-571 (W.D. Wis.) and *Team Schierl Companies v. Aspirus, Inc*., No. 22-CV-580 (W.D. Wis.). Judge William Conley was appointed in 2009 and served as Chief Judge from 2010 to 2017.[17] Judge Conley has presided over antitrust cases including *Fourqurean v. National Collegiate Athletic Association,* 25-cv-68 (W.D. Wis.) and *Ashley Furniture Industries, Inc., v. Packaging Corp. of America*, 16-cv-469 (W.D. Wis.). Either of these experienced jurists would be well-equipped to preside over the Related Actions.

## IV.     CONCLUSION

For the reasons stated above, Illinois Direct Purchaser Plaintiffs respectfully request that the Panel grant transfer and centralization pursuant to 28 U.S.C. § 1407 and that the Panel transfer the Related Actions, as well as any future tag-along actions, to the Northern District of Illinois for consolidated or coordinated pretrial proceedings.

---

[16]     Federal          Judicial          Center,          *Peterson,          James          Donald,*
https://www.fjc.gov/history/judges/peterson-james-donald (last visited Dec. 15, 2025)
[17]     Federal Judicial Center, *Conley, William Martin*, https://www.fjc.gov/node/1392996

Dated:     December 15, 2025                    Respectfully submitted,

By: /s/ *Nicole A. Veno*

Vincent Briganti
Raymond P. Girnys
Peter A. Barile III
Peter Demato
Nicole A. Veno
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Phone: (914) 997-0500
vbriganti@lowey.com
rgirnys@lowey.com
pbarile@lowey.com
pdemato@lowey.com
nveno@lowey.com

Christopher M. Burke
Amelia Burroughs
Yifan (Kate) Lv
Robin Stemen
**BURKE LLP**
402 West Broadway, Suite 1890
San Diego, CA 92101
Phone: (619) 369-8244
cburke@burke.law
aburroughs@burke.law
klv@burke.law
rstemen@burke.law

Marco Cercone
Nicholas A. Vona
**RUPP PFALZGRAF LLC**
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: (716) 854-3400
Facsimile: (716) 332-0336
cercone@rupppfalzgraf.com
vona@rupppfalzgraf.com

Amanda M. Williams
Daniel R. Olson
**BASSFORD REMELE P.A.**

100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
awilliams@bassford.com
dolson@bassford.com

*Attorneys for Plaintiffs Birchmans Parisian, LLC and Phil-N-Cindy's Lunch, Inc. and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I, Nicole A. Veno, hereby certify that a copy of the foregoing Response and this Proof of Service, were electronically filed with the Clerk of the Court through the CM/ECF System and served on all parties via ECF, email or First Class U.S. Mail, postage-pre-paid, on December 15, 2025.

<u>/s/ *Nicole A. Veno*</u>
Nicole A. Veno